UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-61898-CIV-COHN/Snow

HAROLD JOSEPH,

      Plaintiff,

vs.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

      Defendant.
_____/



**REPORT AND RECOMMENDATION**

      This cause is before the Court on the plaintiff's Complaint seeking judicial review of a final decision of the Social Security Administration denying the plaintiff's application for disability benefis. The complaint was filed pursuant to the Social Security Act, 42 U.S.C. § 401, et. seq., and was referred to United States Magistrate Judge, Lurana S. Snow, for report and recommendation.

**I. PROCEDURAL HISTORY**

      The plaintiff filed an application for disability benefits on October 21, 2002, alleging disability since August 2, 2002, as a result of pain, hand tremors, spine and finger problems, dizziness and stroke. The application was denied initially and upon reconsideration. The plaintiff then requested a hearing which was held before Administrative Law Judge Ruben Rivera, Jr., on November 16, 2004. The Administrative Law Judge found that the plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council, after considering additional

evidence, denied the plaintiff's request for review on September 18, 2005. The plaintiff then filed this action seeking judicial review of the decision of the Commissioner.

## II. **FACTS**

The plaintiff was 62 years old at the time of the hearing. He has an 11th grade education and HIS past relevant work was as a retail manager. He alleges that he became disabled in 2002 at the age of 60.

The medical record reveals that on February 10, 1995, the plaintiff suffered a transient ischemic attack (TIA). He was admitted to the hospital and released when his symptoms improved. Subsequent testing indicated that the plaintiff did not have carotid artery occlusive disease. (R:187-206, 215-19)

In September 2002, the plaintiff presented to the Florida Community Health Centers, Inc., complaining of neck pain radiating to his head. An X-ray showed that the plaintiff had chronic spondylosis and disc space narrowing in the cervical spine at C3-4, C4-5, C5-6 and C6-7. He was treated with medication, and during the course of treatment the plaintiff also complained of hip and back pain. (R:231-41)

A psychological assessment of the plaintiff was performed on March 20, 2003, by Kevin K. Braley, LMHC. Mr. Braley found that the plaintiff was not suffering from any emotional disturbance or significant memory loss. The plaintiff was experiencing stress as the result of a recent bankruptcy and inability to make alimony payments, which had led to him being held in contempt of court. (R:248-51)

On March 26, 2003, a physiatric evaluation of the plaintiff was performed by Patrick M. Gonzalez, M.D. Dr. Gonzalez reported that the plaintiff had decreased range of motion of the cervical spine. Bilateral rotation was 0 degrees to 15 degrees, and bilateral bending was 0 degrees to 20 degrees. There was no midline tenderness of the thoracic spine, and full range of motion of the lumbar spine, with pain felt at 85 degrees of flexion. There were no deficits of motor strength, no atrophy and no fasciculations. Dr. Gonzalez summarized his findings as decreased cervical spine range of motion without evidence of upper limbs muscle atrophy, upper limbs weakness or significant neurological deficits. The doctor found that the plaintiff could perform gainful employment at least at a light duty level. (R:252-54)

On June 19, 2003, the plaintiff was examined by Charles D. Phillips, M.D. Dr. Phillips found that the plaintiff's cervical motion was about 1/3 of normal and carried out slowly. Lumbar range of motion likewise was carried out slowly with apparent difficulty, and the plaintiff's gait was slow. Cervical spine X-rays revealed moderately severe degenerative change at C3-4, C4-5 and C5-6, and moderate degenerative change at C6-7. Lumbar spine X-rays showed mild scoliosis in the mid-lumbar region and mild disc space narrowing at L1-2. Calcification in the anterior longitudinal ligament was noted at L4-5, L3-4 and L1-2, and there was mild to moderate degeneration of both hips. (R:277-78)

Dr. Phillips diagnosed chronic cervical strain/degenerative arthritis of the cervical spine; chronic lumbar

3

staring/lumbar degeneration/questionable spinal stenosis and mild hip degeneration bilaterally. Dr. Phillips concluded that while the plaintiff was "subjectively disabled," there could be no objective finding of disability without an MRI of the lumbar spine to determine the presence or absence of stenosis. In the doctor's view, the presence of stenosis would provide an objective reason to consider the plaintiff disabled. (R:278)

On May 20, 2003, a psychosocial assessment of the plaintiff was performed by Florida Community Heath Centers, Inc. The plaintiff complained that he had been denied SSI benefits, and was advised to reapply. A mental status examination showed no abnormalities. (R:221-26)

The plaintiff was treated for neck and back pain at the Volunteers in Medicine Clinic in 2003 and 2004. Medication and physical therapy were prescribed. An August 24, 2004, discharge evaluation of the plaintiff by Russell Ortisi, a physical therapist, indicated that the plaintiff had received the full benefit of skilled therapy and was to continue exercise at home. (R:301-35,349-71)

A Physical Residual Functional Capacity Assessment of the plaintiff was made by Keith R. Holden, M.D., a state agency non-examining physician, on July 14, 2003. Dr. Holden found that the plaintiff could lift twenty pounds occasionally and ten pounds frequently. He could stand and/or walk, or sit (with normal breaks) four about 6 hours in an 8-hour workday. He had unlimited ability to push and/or pull. The plaintiff could balance, kneel

and crawl frequently, and could climb, stoop and crouch occasionally. He had no manipulative, visual, communicative or environmental limitations. (R:279-86) This assessment was consistent with findings made by a state agency non-examining physician on April 25, 2003 (R:269-76)

On August 30, 2004, a prostate biopsy revealed the presence of a tumor. Notes from the Volunteers in Medicine Clinic indicate that all treatment options were discussed with the plaintiff. A bone scan was performed, revealing no bony metastatic disease. The medical records do not reveal any action taken with respect to the prostate tumor. (R: 336,339,345)

A CT Scan of the plaintiff's lumbar spine was performed on November 1, 2004. It revealed mild hypertrophic degenerative change and degenrative disc disease, with small central and right paracentral disc protrusion at the L5-S1 level, with possible associated mass effect on the intraspinal portion of the right S1 nerve. There was no gross spinal stenosis. (R:372-73)

The plaintiff testified at the administrative hearing that he has a number of side of effects from the medications he is taking, including dizziness, grogginess, upset stomach, nausea and diarrhea. The plaintiff stated that he must lie down nine or ten times per day because of severe headaches he gets one to three times per day, as well as neck, lower back and hip pain. He rated his headache and lower back pain as 7-9 on a scale of 1 to 10. According to the plaintiff, his lower back pain was constant and

excruciating. Additionally, the plaintiff experienced severe cramping his feet and legs.(R:55-63)

The plaintiff related that he is depressed and irritable, and often forgets to bathe. Most days he stays in his underwear. The plaintiff was unable to enjoy any of his former hobbies, which included billiards, fishing and dancing. He also suffered from forgetfulness and an inability to concentrate even on a television program. (R:64-7)

The plaintiff testified that he has a driver's license, but drives only 5-10 miles per week. He goes grocery shopping with his roommate, using an electric cart. He only cooks in the microwave, and is unable to do most household chores for more than a few minutes. The plaintiff stated that he has difficulty pulling a zipper and fastening buttons, and uses a chair in the shower. He estimated that he could walk for only five minutes or 100 feet. He could sit or stand for 25-30 minutes, and was unable to bend, stoop, climb stairs or reach with his arms. The heaviest thing he could lift would be a gallon of water. The plaintiff did not engage in any social activities. (R:68-72)

### III. **DECISION OF THE ALJ**

The ALJ first found that the plaintiff was insured for disability benefits through the date of the decision and that he had not engaged in substantial gainful activity since the alleged disability onset date of August 2, 2002. Next, the ALJ found that based on the medical evidence of record, the plaintiff's alleged

mental impairment was not "severe," as that term is defined in the applicable Social Security regulations. However, the plaintiff did suffer from degenerative disc disease of the cervical and lumbar spine, an impairment that was "severe," but which did not meet or medically equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4. (R:26-7)

After summarizing the medical evidence of record and the plaintiff's testimony, the ALJ found that the plaintiff's contentions were not credible to show an inability to perform a full range of light work. The ALJ determined that the plaintiff's allegations were not supported by any clinical or laboratory findings establishing impairments which reasonably could be expected to cause such limitations and were inconsistent with the other evidence. The ALJ pointed out that Dr. Phillips could find no objective basis for a finding of disability, unless subsequent tests showed the presence of stenosis.

The ALJ gave great weight to the opinions of Dr. Gonzalez, the consultative examining physician and the state agency non-examining physicians, and found that the plaintiff retained the residual functional capacity to lift up to 20 pounds occasionally and 10 pounds frequently, and thata he could stand and walk or sit for six hours in an 8-hour workday. Therefore, the ALJ concluded that the plaintiff retained the residual functional capacity to perform his past relevant work as manager of a retail store, and was not disabled for purposes of the Social Security Act.

## IV. CROSS MOTIONS FOR SUMMARY JUDGMENT

The plaintiff seeks reversal or remand on the grounds that (1) the ALJ should have found that the plaintiff's headaches and hip pain were "severe" impairments; (2) the record did not support the ALJ's finding that the plaintiff retained the residual functional capacity to perform light work, and (3) vocational expert testimony was required to establish what jobs the plaintiff could perform.

The Commissioner has moved for summary judgment on the ground that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.

## V. RECOMMENDATIONS OF LAW

At issue before the Court is whether the final decision of the Commissioner, as reflected by the record, is supported by substantial evidence. "Even if the evidence preponderates against the Secretary, we must affirm if the decision is supported by substantial evidence." Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1985). Substantial evidence is defined as such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389 (1971); Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983). The Court must review the record as a whole to determine if the decision is supported by substantial evidence. Bloodsworth, 703 F.2d at 1239. The Court must also determine whether the Administrative Law Judge applied the proper legal standards. No presumption of validity

8

attaches to the Commissioner's determination of the proper legal standards to be applied. Richardson, supra.

In making a disability determination, the ALJ must perform the sequential evaluation outlined in 20 CFR § 404.1520. First the claimant must not be engaged in substantial gainful activity after the date the disability began. Second the claimant must provide evidence of a severe impairment. Third, the claimant must show that the impairment meets or equals an impairment in Appendix 1 of the Regulations. If the claimant fails to provide sufficient evidence to accomplish step three, the analysis proceeds to step four. In step four, the ALJ must determine the claimant's residual functional capacity, then determine if the claimant can perform his or her past relevant work. The claimant has the burden of proving the inability to perform past relevant work. If the claimant's evidence shows an inability to perform past relevant work, the burden shifts to the ALJ in step five. The ALJ must show that there is other gainful work in the national economy which the claimant can perform. Once the ALJ identifies such work, the burden returns to the claimant to prove his or her inability to perform such work.

The plaintiff first contends that the ALJ erred in failing to find that the plaintiff's headaches and hip pain were "severe" impairments. As the Commissioner points out, the medical record does not contain a separate diagnosis of headaches. Instead, it appears from the record that the plaintiff was treated for pain associated with his cervical degenerative disc disease,

including headaches. Since the ALJ found that the plaintiff's cervical disc disease was a "severe" impairment, there was no need for a separate finding pertaining to headaches. With regard to the plaintiff's hip pain, the medical record shows only mild degenerative changes in both hips. As to this claim, the plaintiff failed to meet his burden of proving that the impairment was severe.

The plaintiff next argues that the record did not support the ALJ's finding that the plaintiff retained the residual functional capacity to perform light work. The ALJ relied on the express findings of the consultative examining physician, Dr. Gonzalez, and the assessments of the two state agency non-examining physicians. The opinions of these doctors was consistent with the records of the plaintiff's treating physicians, including Dr. Phillips, who stated that the record was devoid of any objective basis for concluding that the plaintiff was disabled.

The only evidence of disabling pain came from the plaintiff's own testimony. The ALJ must consider a claimant's subjective testimony regarding pain if he finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Mason v. Bowen, 791 F.2d 1460, 1462 (11th Cir. 1986); Landry v. Heckler, 734 F.2d 1551, 1553 (11th Cir. 1986).

However, the ALJ may reject a claimant's testimony regarding pain as not credible, and that determination must be upheld if it is supported by substantial evidence. <u>Wilson v. Heckler</u>, 734 F.2d 513, 517 (11th Cir. 1984).

Here, the ALJ found that the plaintiff's allegations were not supported by any clinical or laboratory findings establishing impairments which reasonably could be expected to cause such limitations and were inconsistent with the other evidence of record. In light of the medical records of the plaintiff's treating and examining physicians, the ALJ's finding that the plaintiff's allegations of pain were not fully credible is supported by substantial evidence and should not be disturbed.

Finally, the plaintiff argues that vocational expert testimony was required to demonstrate that the existence of available jobs that the plaintiff could perform. Since the ALJ properly found that the plaintiff did not meet his burden of proving that he was unable to perform his past relevant work as a retail store manager, the sequential evaluation process concluded and no vocational expert testimony was required.

The decision of the ALJ was supported by substantial evidence and the correct legal standards were applied, and his decision should be affirmed.

## VI. <u>CONCLUSION</u>

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the plaintiff's Motion for Summary Judgment (DE 20) be DENIED, and the Commissioner's Motion for Summary Judgment (DE 23) be GRANTED.

The parties will have ten days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with The Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1998), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 19th day of December, 2006.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

Lilli Marder, Esq. (P)
AUSA David Melliger (FTL)